**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

WILLIAM R. DEAL,                    :
                                    :
    Plaintiff,                 :
                                    :
v.                                  :    CIVIL ACTION NO.
                                    :    2:17-CV-209-RWS
TUGALO GAS COMPANY,                 :
INC., et al.,                       :
                                    :
    Defendants.                :

## <u>ORDER</u>

This matter is before the Court on Defendant Tugalo Gas Company's

Motion to Dismiss [Doc. No. 13], Defendant Thomas Gilmer's Motion to Dismiss

[Doc. No. 15], the remaining Defendants' Motion to Dismiss [Doc. No. 17],

Defendant Tugalo Gas Company's Motion to Dismiss the Amended Complaint

[Doc. No. 22], Defendant Thomas Gilmer's Motion to Dismiss the Amended

Complaint [Doc. No. 24], the remaining Defendants' Motion to Dismiss the

Amended Complaint [Doc. No. 23], Defendant Tugalo's Motion to Dismiss

Plaintiff's Derivative Claims [Doc. No. 34], Plaintiff's Motion to Defer Ruling

[Doc. No. 44], Plaintiff's Motion to Appoint an Auditor [Doc. No. 51], and

Defendants' Motion for Extension of Time [Doc. No. 53].  As an initial matter, in

AO 72A
(Rev.8/8
2)

light of the filing of the Amended Complaint, the original Motions to Dismiss [Doc. Nos. 13, 15, and 17] are DISMISSED as moot.

## I.  Factual Background

This case arises out of a long-standing family dispute over a family-owned corporation, Defendant Tugalo Gas Company.  Plaintiff William R. Deal is a shareholder of Tugalo.  The following facts are taken from Plaintiff's Amended Complaint and, for purposes of Defendants' Motions to Dismiss, are accepted as true.

In 2005, the Company shares owned by Plaintiff, his mother, Elizabeth Gilmer Deal, and his brother, Robert Deal, were transferred into a North Carolina limited liability company, EGD Holdings.  Upon Elizabeth Gilmer Deal's death, EGD Holdings' shares were transferred into a revocable trust.  The revocable trust subsequently assigned the shares to its co-trustees, Plaintiff and Robert Deal, in their individual capacities.  As a result, Plaintiff now owns his shares in Tugalo outright.

Presently, Tugalo has 471 outstanding shares.  Defendant Thomas Gilmer owns 208 shares, with the remaining shares owned by Plaintiff (109.75), Robert Deal (109.75), Defendant Sarah Gilmer Payne (36), Defendant Etheldra Gilmer

AO 72A
(Rev.8/8
2)

(6.5), and Defendant Bruce Stancil, Jr. (1), a former Vice President and Secretary of Tugalo. Tugalo holds 29 shares in treasury stock.

In 2012, EGD Holdings made a demand for action pursuant to O.C.G.A. § 14-2-742(2) on Tugalo. EGD Holdings asserted that Defendant Thomas Gilmer, who is the President and Chairman of the Board of Directors of Tugalo, was committing corporate waste by: (1) directing Tugalo employees to perform maintenance on his property without the company receiving any benefit in exchange; (2) using Tugalo funds to pay the Gilmers' debts and bills; and (3) leasing real property to the Company for which he was compensated.

In 2013, EGD Holdings filed a direct action in this Court against Thomas Gilmer for breach of fiduciary duty. See EGD Holdings v. Thomas Gilmer, Civil Action No. 2:13-CV-95-WCO, United States District Court, N.D. Georgia ("2013 EGD Holdings Case"). Thomas Gilmer filed a Motion to Dismiss, asserting EGD Holdings' direct shareholder action was improper. This Court, finding that EGD Holdings did not allege a special injury and that the justifications for a direct action were not present, agreed and dismissed the case.

On March 27, 2017, Plaintiff again made a demand for action pursuant to O.C.G.A. § 14-2-742(2) on Tugalo [Doc. No. 20-2]. In the Demand Letter,

3

Plaintiff alleged the same conduct by Thomas Gilmer that formed the basis for the 2013 EGD Holdings Case and also alleged misconduct by the other individual Defendants. Following receipt of the Demand Letter, Tugalo's Board of Directors appointed a Demand Review Committee ("DRC") to investigate the allegations. The DRC consisted of two members: Carlton H. Jones, III and Bruce Stancil, Jr. The DRC determined that a shareholder's derivative action was not in the best interest of Tugalo.

Plaintiff filed the instant case on October 28, 2017 [Doc. No. 1]. Unlike the 2013 direct action, Plaintiff filed this Complaint against many Tugalo shareholders and employees, including Thomas Gilmer, Sarah Gilmer Payne, Etheldra Gilmer, Bruce Stancil, Jr., Ray Crenshaw (the current Vice President, Secretary, and a Director), and Lewis Smith (a Tugalo employee and an alleged former Director). Plaintiff's Amended Complaint contains numerous allegations concerning the dealings and behavior of Defendants.

Generally, Plaintiff alleges that Thomas Gilmer has abused his position and caused Tugalo to pay his personal expenses, extend benefits to him, and to incur numerous questionable charges for his family and the other individual Defendants. Plaintiff alleges that during their time as Officers and Directors of the Company,

4

the other individual Defendants have overseen, acquiesced, and ratified the improper use of Company funds by Thomas Gilmer and have also enjoyed the benefits of similar improper expenditures. Plaintiff alleges that these are "de facto dividends" in lieu of the payment of properly-authorized dividends. Plaintiff asserts seventeen claims [Doc. No. 20]:

(1)    Count One alleges Thomas Gilmer breached his fiduciary duty:

(2)    Count Two alleges Defendants Sarah Gilmer Payne, Etheldra Gilmer, Bruce Stancil, Jr., Ray Crenshaw, and Lewis Smith breached their fiduciary duties and aided and abetted Thomas Gilmer's breach of his fiduciary duty;

(3)    Count III alleges all Defendants committed fraud;

(4)    Count IV alleges all Defendants conspired to defraud, oppress, freeze out, and retaliate against Plaintiff;

(5)    Count V seeks judicial dissolution of the company;

(6)    Count VI alleges Thomas Gilmer's conduct amounts to abuse of control;

(7)    Count VII alleges all Defendants are liable for wrongful distributions;

(8)    Count VIII asserts a claim for accounting based on the Directors' breach of their fiduciary duties;

(9)    Count IX is brought on behalf of the Company and seeks to enjoin any unlawful conveyance, assignment, or transfer of corporate assets or other unlawful transactions;

(10)    Count X asks the Court to set aside the allegedly unlawful payments;

(11)    Count XI alleges all Defendants engaged in wrongful conversion of Company assets;

(12)    Count XII seeks appointment of an auditor to account for funds supposedly distributed for the benefit of Defendants;

(13)    Count XIII seeks a declaratory judgment declaring the Stancil stock transfer invalid because it violated Company bylaws;

AO 72A
(Rev.8/8
2)

(14)   Count XIV alleges all Defendants were unjustly enriched by funds they have wrongfully received;

(15)   Count XV alleges Defendant Stancil must return any payment he received for his shares;

(16)   Counts XVI and XVII seek punitive damages and attorneys' fees.

In response to the First Amended Complaint, on January 2, 2018, members of the Tugalo Board of Directors appointed a Litigation Review Committee ("LRC") [Doc. No. 34-2]. The LRC consists of two Tugalo Board members: Carlton H. Jones, III and Robert Aycock [Doc. Nos. 34-4 and 34-5]. The LRC was vested with full and final authority to investigate, review, and analyze the allegations in the First Amended Complaint. On February 28, 2018, the LRC notified the Board and Tugalo's counsel that a derivative action was not in Tugalo's best interest [Doc. No. 34-6]. The LRC recommended that this action be dismissed [Id.].

Defendants move to partially dismiss Plaintiff's Amended Complaint on several grounds: (1) numerous claims are barred by the applicable statutes of limitations; (2) Plaintiff's direct shareholder action is improper; and (3) Plaintiff's fraud claims do not satisfy Federal Rule of Civil Procedure 9(b)'s particularity standard [Doc. Nos. 22, 23, and 24]. Defendant Tugalo has also moved to dismiss Plaintiff's derivative claims, based upon the recommendation of the LRC [Doc.

6

No. 34], but Plaintiff has requested additional time to conduct discovery [Doc. No. 44].

## II.  Analysis - Motions to Dismiss Direct Action Claims [Doc. Nos. 22, 23, and 24]

Defendant Tugalo has moved to dismiss certain claims in Plaintiff's Amended Complaint [Doc. No. 22]. The remaining Defendants have adopted Tugalo's arguments [Doc. Nos. 23 and 24]. These Motions apply to Plaintiff's direct action claims. Defendants have also filed a Motion to Dismiss Plaintiff's derivative claims [Doc. No. 34], which will be addressed below.

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting

AO 72A
(Rev.8/8
2)

Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff

pleads factual content necessary for the court to draw the reasonable inference that

the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true,

and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir.

1999).  However, the same does not apply to legal conclusions set forth in the

complaint.  Sinaltrainal v. Coco-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)

(citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S.

at 678.  Furthermore, the court does not "accept as true a legal conclusion couched

as a factual allegation."  Twombly, 550 U.S. at 555.

## B.     Statutes of Limitations

As an initial matter, the Court will address Defendants' arguments regarding

the statutes of limitations that apply in this case.  At this point in the litigation,

dismissal is only appropriate on a statute of limitations defense if it is "'apparent

from the face of the complaint' that the claim is time-barred." La Grasta v. First

Union Securities, Inc., 358 F.3d 840, 846 (11th Cir. 2004).  Here, the limitations

8

defense is not apparent on the face of the Amended Complaint. Additionally, there are tolling issues that are fact intensive and that cannot be decided at the pleading stage. As a result, Defendants' Motions to Dismiss based on the statutes of limitation are DENIED.

## C.    Count VII - Wrongful Distributions

In Count VII, Plaintiff alleges that Defendants are personally liable to the Company for wrongful distributions pursuant to O.C.G.A. § 14-2-832. Under that statute, "[a] director who votes for or assents to a distribution made in violation of Code Section 14-2-640 . . . is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating Code Section 14-2-640." O.C.G.A. § 14-2-832(a). A proceeding based upon this statute must be brought within two years after "the date on which the effect of the distribution was measured." O.C.G.A. § 14-2-832(c). Pursuant to O.C.G.A. § 14-2-640(e), the effect of a distribution is measured by "[t]he date the distribution is authorized if payment occurs within 120 days after the date of authorization."

Here, Plaintiff asserts numerous allegations based on "de facto" distributions [Doc. No. 20, ¶¶ 1(k), 1(l), 63, 70, 71, 102, 106, 115, 129, 133, 155, 157, 160, 161, and 172]. Plaintiff defines "de facto" distributions as those

9

"conflicting interest transactions and Company expenditures for the personal benefit of Company insiders" [Doc. No. 20, ¶ 70]. However, such alleged expenditures do not qualify as unlawful distributions because such a distribution only occurs when a Board of Directors votes or assents to a transfer of money to a shareholder. See O.C.G.A. § 14-2-140(6) (defining "distribution"). Plaintiff has not alleged that Tugalo's Board of Directors voted or assented to these distributions. As a result, any wrongful distribution claim based upon these distributions is dismissed.

Other than the "de facto" distribution claims, the only remaining wrongful distribution allegation is as to the Company's payment to Bruce Stancil, Jr. [Doc. No. 20, ¶ 63(a)]. This distribution occurred on June 24, 2009, and appears to be well outside the two-year statute of limitation. However, tolling may apply, and the Court cannot dismiss this claim on the current record.

Defendants' Motions to Dismiss Count VII are GRANTED in part and DENIED in part. It is GRANTED as to all claims except the June 24, 2009, distribution to Bruce Stancil, Jr.

### D.    Direct Action vs. Shareholders Derivative Action

Defendants have asked the Court to dismiss Counts I, II, VI, VII, IX, X, XI,

10

XIII, XIV, XV, XVI, and XVII because they may only be pursued in a shareholder derivative suit. For the reasons discussed below, the Court agrees that these claims may only be pursued derivatively.

The Court applies state law to determine whether a cause of action is direct or derivative. See Hantz v. Belyew, No. 1:05-CV-1012-JOF, 2006 WL 740408, at *4 (N.D. Ga. Mar. 23, 2006) (citation omitted). Under Georgia law, the general rule is that allegations of breach of fiduciary duty and misappropriation of corporate assets may only be pursued in a shareholder derivative suit. Phoenix Airline Servs. v. Metro Airlines, 397 S.E.2d 699, 702 (Ga. 1990); Thomas v. Dickson, 301 S.E.2d 49, 50 (Ga. 1983); O.C.G.A. § 14-2-831. The reasons for requiring a derivative suit are as follows:

> 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares.

Thomas, 301 S.E.2d at 51.

A court determines whether claims are direct or derivative "by looking to what the pleader alleged. It is the nature of the wrong alleged and not the

11

pleader's designation or stated intention that controls the court's decision." See Phoenix Airline Servs., Inc. v. Metro Airlines, Inc., 397 S.E.2d 699, 702 (Ga. 1990) (citation omitted).  Georgia recognizes two exceptions to the general rule and will allow direct actions to proceed: (1) if the shareholder has suffered a special injury, and (2) where the circumstances demonstrate the reasons for the general rule do not apply.  Barnett v. Fullard, 701 S.E.2d 608, 612 (Ga. Ct. App. 2010) (citation omitted).

Here, Plaintiff argues that he satisfies the special injury test, but he fails to explain how his injury is separate and distinct from the injury sustained by the corporation as a whole or by the other shareholders.  As alleged in his Complaint, Tugalo has six shareholders: Defendant Thomas Gilmer, Plaintiff William Deal, non-party Robert Deal, Defendant Sarah Gilmer Payne, Defendant Etheldra Gilmer, and Defendant Bruce Stancil, Jr.  Defendant Stancil has no familial relationship to any other shareholder.  Further, while Defendant Thomas Gilmer has the right to vote the shares held by Sarah Gilmer Payne and Etheldra Gilmer, it is undisputed that these two parties remain shareholders of Tugalo and continue to have the same rights and obligations as every other shareholder.  Assuming that Plaintiff's allegations are true, the other Defendants and Robert Deal have all

12

AO 72A
(Rev.8/8
2)

suffered in a proportional amount to Plaintiff, since they share the Company's gains and losses. As a result, the Court finds that Plaintiff has not shown a special injury that will allow a direct action on these claims to proceed.

Plaintiff has also not shown that the circumstances demonstrate the reasons for the general rule do not apply. The Court is particularly concerned that not all shareholders are parties to this suit. Specifically, Plaintiff's brother, Robert Deal, is not a party to this action. Many of the allegations in the Amended Complaint relate to actions taken against Robert Deal [Doc. No. 20, ¶¶ 31-34, 40, 44, 48-50, 54, 56-57, 101(d)-(j), and 181]. Plaintiff's direct action claims would hurt the rights of other shareholders because he would receive compensation in excess of his proportionate harm. His direct action claims would also subject Defendants to multiple suits. In these circumstances, a direct action is not appropriate.

Defendants' Motions to Dismiss Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII is GRANTED as to Plaintiff's direct action claims.

## E.    Fraud Claim - Heightened Pleading Standard

Count III is a fraud claim against the individual Defendants as current and/or former Directors of the Company. Plaintiff alleges that Defendants have perpetrated a fraud by "affirmatively misrepresenting and concealing material

distributions to or for the benefit of Defendants that have no legitimate business purpose, and constitute disguised dividends" [Doc. No. 20, ¶ 119]. He alleges that Defendants have "also misrepresented their present intent, and that of the Company, to refrain from causing the Company to incur expenses for their personal benefit" and have "misrepresented the nature and extent, if any, of any so-called 'independent investigation' into [his] concerns and complaints" [Id., ¶¶ 123 and 124]. Plaintiff alleges that he detrimentally relied upon these misrepresentations [Id., ¶ 128].

Defendants argue that Plaintiff's fraud claim should be dismissed because it fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9. Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity. "A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud." In re Theragenics Corp. Sec. Litig., 105 F.Supp.2d 1342, 1347 (N.D. Ga. 2000) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

14

AO 72A
(Rev.8/8
2)

Here, the Court finds that Plaintiff has adequately pled his fraud claim. His 75-page Amended Complaint contains numerous factual allegations of misrepresentations made by Defendants. He has also attached and incorporated documents that provide detailed information about his claims against Defendants. Defendants' Motions to Dismiss Count III are DENIED.[1]

**F.    Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss [Doc. Nos. 22, 23, and 24] are GRANTED in part and DENIED in part. Defendants' Motions to Dismiss Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII are GRANTED as to Plaintiff's direct action claims. Defendants' Motions to Dismiss the fraud claim are DENIED.

**III.    Motion to Defer Ruling [Doc. No. 44]**

Plaintiff asks the Court to defer consideration of Tugalo's Motion to Dismiss his derivative claims [Doc. No. 44]. Specifically, he seeks discovery regarding two issues: (1) the independence and good faith of the LRC; and (2) the

---

[1] The Court notes that Defendants may still have a statute of limitations defense to the fraud claim, especially regarding claims previously asserted in the 2103 EGD Holdings Case. On the current record, with the numerous allegations of fraud raised in the Amended Complaint, the Court will not decide the statute of limitations issue at this time.

AO 72A
(Rev.8/8
2)

reasonableness of the LRC's investigation.

Plaintiff concedes that discovery in the context of a motion to dismiss brought pursuant to O.C.G.A. § 14-2-744 is entirely within the discretion of the trial court. In fact, such discovery is "intended more as an aid to the Court than it is as a preparation tool for the parties," and "is not afforded to the plaintiff as a matter of right but only to such extent as the Court deems necessary." <u>LR Trust on behalf of SunTrust Banks, Inc. v. Rogers</u>, 270 F.Supp.3d 1364, 1382 (N.D. Ga. 2017) (citing <u>Kaplan v. Wyatt</u>, 484 A.2d 501, 510 (Del. Ch. 1984), <u>aff'd</u> <u>by</u> 499 A.2d 1184 (Del. 1985)). After review of the record, the Court is unable to find that discovery is necessary as an aid to the Court, as there is sufficient information on the current record to rule on the pending Motion to Dismiss. Plaintiff's Motion [Doc. No. 44] is DENIED, and the Court will turn to Defendant Tugalo's Motion to Dismiss [Doc. No. 34].

## IV. Motion to Dismiss Plaintiff's Derivative Claims [Doc. No. 34]

Defendant Tugalo has moved to dismiss the following derivative claims pursuant to O.C.G.A. § 14-2-744: Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII [Doc. No. 34].

AO 72A
(Rev.8/8
2)

## A.    Legal Standard

Shareholder derivative suits are governed by Federal Rule of Civil Procedure 23.1, which "creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question," but state law determines the adequacy of those efforts.  LR Trust, 270 F.Supp.3d at 1368, n.10.  The Court looks to the state of incorporation to provide the applicable law.  In re The Home Depot, Inc. S'holder Derivative Litig., 223 F.Supp.3d 1317, 1323 (N.D. Ga. 2016).  Here, Tugalo is incorporated in Georgia, and thus Georgia law controls.

In Georgia, O.C.G.A. § 14-2-744 lays out the process through which a corporation may seek to dismiss a derivative proceeding brought by a shareholder. O.C.G.A. § 14-2-744(a) provides in relevant part:

> The court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that [an LRC] has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation.  The corporation shall have the burden of proving the independence and good faith of the group making the determination and the reasonableness of the investigation.

The Court understands its inquiry to be into the procedures employed by the LRC

17

in making its decision, rather than the substantive decision itself. See Kaplan, 484 A.2d at 519 ("it is the conduct and activity of the [Committee] in making its evaluation of the factual allegations and contentions contained in the plaintiff's complaint which provide the measure for the Committee's independence, good faith, and investigatory thoroughness. This is because it is the [Committee] which is under examination at this first-step stage of the proceedings, and not the merits of the plaintiff's cause of action.").

In addition, a motion to dismiss pursuant to O.C.G.A. § 14-2-744 "does not technically fit into a category of [a 12(b)(6) motion to dismiss] nor does it reach the actual merits of the stockholder's claims as would be at issue in the usual summary judgment motion . . . ." Thompson v. Sci. Atlanta, Inc., 621 S.E.2d 796. 799 (Ga. Ct. App. 2005). This Motion to Dismiss is "essentially a hybrid summary judgment motion for dismissal. Accordingly, [the court] may look beyond the pleadings to the evidence in the record to resolve the [case]." Benfield v. Wells, 749 S.E.2d 384, 385 (Ga. Ct. App. 2013). "[A]ll non-conclusory factual allegations asserted in the [Amended Complaint] are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff [shareholder] as the non-movant." Sciabacucchi v. Burns, No. 15-CV-7506 (PKC), 2016 WL 4074446, at

18

*1 (S.D.N.Y. July 29, 2016) (citations omitted).

## B.    Analysis

The Court will address the independence, good faith, and reasonableness of the Committee and its investigation in turn.

### i.    Independence of the LRC Members and Good Faith

The Georgia Corporation Code "is instructive in establishing criteria for independence." Millsap v. Am. Family Corp., 430 S.E.2d 385, 387 (Ga. Ct. App. 1993). "Under O.C.G.A. § 14-2-744(c), a director is not disqualified as lacking independence if (1) nominated or elected by directors who are not independent; (2) the director is named as a defendant in the derivative proceeding; or (3) if the director approved the action being challenged in the derivative proceeding so long as the director did not receive a personal benefit as a result of the action." Id. at 387. Additionally, Georgia courts that have examined the qualifications of members of special litigation committees have "required that they be both 'disinterested' in the sense of not having a personal interest in the transaction being challenged as opposed to a benefit which devolves upon the corporation or all shareholders generally," and "'independent' in the sense of not being influenced in favor of the defendants by reason of personal or other relationships."

AO 72A
(Rev.8/8
2)

Benfield, 749 S.E.2d at 387-88.  See also Millsap, 430 S.E.2d at 387 (noting a committee member is independent if he "is in a position to base his decisions on the merits of the issue rather than being governed by extraneous considerations or influences").

The term "good faith" is not defined in the Corporations section of the Georgia Code, but Georgia courts have concluded that "dictionaries may supply the plain and ordinary meaning of a word."  See, e.g., Dodds v. Dabbs, Hickman, Hill and Cannon, LP, 750 S.E.2d 410, 417 (Ga. Ct. App. 2013).  Thus, the Court will look to the dictionary to provide the ordinary meaning of the term "good faith."  Black's Law Dictionary defines the term as: "A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary 762 (9th ed. 2009).

Here, Jones and Aycock were selected to serve on the LRC by a majority vote of independent Directors present at a meeting of the Tugalo Board [Doc. No. 34-3, ¶¶ 5-7].  Jones and Aycock were elected as Directors after the occurrence of the conduct at issue in this litigation [Doc. No. 34-4, ¶¶ 7-11; Doc. No. 34-5, ¶¶

20

5-10]. Neither Jones nor Aycock are shareholders of Tugalo, and they do not have a pecuniary interest in the outcome of this litigation [Doc. No. 34-4, ¶ 7; Doc. No. 34-5, ¶ 7]. Moreover, each has a professional background that is wholly unrelated to Tugalo, and each seldom interacted with any of Defendants prior to this litigation [Doc. No. 34-4, ¶¶ 7-11; Doc. No. 34-5, ¶¶ 5-10].

Plaintiff argues that the LRC was not independent and did not act in good faith because Aycock had a "preexisting personal and business relationship with Defendant Thomas Gilmer" [Doc. No. 43, p. 13]. Specifically, Aycock owned a business that was a customer of Tugalo, but he has not owned that business in ten years [Doc. No. 34-4, ¶ 8]. Aycock has also attested that he has occasionally seen Defendant Thomas Gilmer at the Toccoa-Stephens County Airport over the years and considers him to be an acquaintance [Id., ¶ 10]. The Court finds that these business and personal relationships are insufficient to raise a question as to the LRC's independence.

Next, Plaintiff argues that the LRC was not independent because it relied too heavily upon the DRC report drafted by Defendant Stancil. But the LRC did not blindly rely on the DRC report. Instead, the LRC conducted its own interviews of the witnesses referenced in the DRC report [Doc. No. 34-6, p. 1].

It also examined records regarding each claim [Doc. Nos. 34-2 and 34-6]. It appears the only allegations not independently examined by the LRC were the allegations for which the DRC concluded payments were improper [Doc. No. 34-6, pp. 3-4].

Additionally, Plaintiff argues that Jones could not act independently or in good faith due to his participation on both the DRC and the LRC, which led to a relationship with Defendant Stancil and a prejudgment about the merits of Plaintiff's claims in this case. Overlap in demand review committees and litigation review committees does not, without more, destroy independence. See Goldstein v. Wells, 673 S.E.2d 325, 326-27 (Ga. Ct. App. 2009). The Court finds significant that the LRC uncovered a procedural error, not included in the DRC report, related to the sale of Stancil's shares [Doc. No. 34-6, p. 4]. This suggests that the LRC had not prejudged the circumstances that led to this litigation.

Finally, Plaintiff argues that the DRC and LRC reports acknowledge that Tugalo assets were used for personal benefits. He argues that this shows his claims have some merit, and therefore, they should not be dismissed. However, an LRC must exercise its business judgment in determining whether a derivative suit is in the corporation's best interests, and the merit of the claim is only one

22

factor that an LRC must consider. Indeed, an LRC may in good faith recommend dismissal of a derivative suit even if that suit may ultimately be successful. See Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del. 1981) (noting that the decision to pursue a derivative suit "requires a balance of many factors ethical, commercial, promotional, public relations, employee relations, fiscal as well as legal").

"[U]pon [Defendant] coming forward with a motion to dismiss, supported by the voluminous and detailed report [and other evidence], it was incumbent upon [Plaintiff] to come forward with evidence to support his claim of lack of independence of the [LRC] members." Thompson, 621 S.E.2d at 799. Plaintiff has failed to do so. The Court finds that the LRC was independent and acted in good faith in determining that this shareholder's derivative action was not in Tugalo's best interest.

###     ii.     Reasonableness of Investigation

Under Georgia law, "[a]n independent committee's investigation and determination have been held reasonable and conducted in good faith when the committee has undertaken a 'detailed, documented investigation," including interviewing numerous witnesses and reviewing voluminous documents."

23

AO 72A
(Rev.8/8
2)

Millsap, 430 S.E.2d at 388.

Plaintiff argues that the LRC's investigation was flawed in several ways. First, Plaintiff argues the "most obvious and significant" failure of the LRC is that it "failed to address all of Plaintiff's allegations and failed to uncover any facts concerning additional suspect transactions that are readily apparent from a review of Company documents" [Doc. No. 43, p. 45]. But, as Plaintiff points out, a reasonable investigation covers the "theories of recovery asserted in the plaintiffs' complaint" and information that "cut[s] at the heart" of the complaint. London v. Tyrrell, Civil Action No. 3321-CC, 2010 WL 877528, at *17 (Del. Ch. Mar. 11, 2010). Here, the LRC examined records that corresponded to the allegations in the Amended Complaint, and they interviewed Malena Johnson, an employee with significant knowledge of Tugalo's daily operations [Doc. Nos. 34-2 and 34-6].

Although the LRC did not specifically address every factual allegation contained in the lengthy Amended Complaint, it is clear that the LRC did an independent, thorough review of documents and interviewed those with knowledge of the circumstances alleged by Plaintiff. There is "no rule of general application that a board must review every possible witness who may shed some light on the conduct forming the basis of the litigation." LR Trust, 270 F.Supp.3d

24

at 1376-77 (quoting <u>Halpert Enters., Inc. v. Harrison</u>, No. 07-1144-CV, 2008 WL 4585466, at *2 (2d Cir. Oct. 15, 2008)).  Also, "in any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ."  <u>Id.</u>  A corporation does not have to exhaust its every resource in order to conduct a reasonable investigation. Here, although the investigation may not have been exhaustive, it was reasonable.  Thus, the Court finds that the LRC conducted a reasonable investigation as required by O.C.G.A. § 14-2-744.

### C.    Conclusion

In summary, the Court finds that Defendants have met their burden under O.C.G.A. § 14-2-744 of proving the independence and good faith of the LRC and the reasonableness of the investigation.  Plaintiff has not established material issues of fact regarding the same.  As a result, Defendant's Motion to Dismiss [Doc. No. 34] is GRANTED.  The derivative claims brought in Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII are DISMISSED.

## V.    Motion to Appoint Auditor [Doc. No. 51] and Motion for Extension of Time [Doc. No. 53]

Plaintiff has filed a Motion to Appoint an Auditor [Doc. No. 51].  Given that this Order has narrowed the issues to be decided in this case and given that

AO 72A (Rev.8/8 2)

briefing on Plaintiff's Motion is not yet complete, Plaintiff's Motion [Doc. No. 51] is DENIED without prejudice. Plaintiff has leave to file a renewed Motion to Appoint an Auditor in light of the new posture of this case. Defendants' Motion for Extension of Time [Doc. No. 53] is DENIED as moot.

## VI. Conclusion

For the reasons discussed above, the original Motions to Dismiss [Doc. Nos. 13, 15, and 17] are DISMISSED as moot. Defendants' Motions to Dismiss [Doc. Nos. 22, 23, and 24] are GRANTED in part and DENIED in part. Defendants' Motions to Dismiss Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII are GRANTED as to Plaintiff's direct action claims. Defendants' Motions to Dismiss the fraud claims are DENIED.

Plaintiff's Motion to Defer Ruling [Doc. No. 44] is DENIED. Defendant's Motion to Dismiss [Doc. No. 34] is GRANTED. The derivative claims brought in Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII are DISMISSED.

Plaintiff's Motion to Appoint an Auditor [Doc. No. 51] is DENIED without prejudice. Defendants' Motion for Extension of Time [Doc. No. 53] is DENIED as moot.

AO 72A
(Rev.8/8
2)

The Court notes that many of the claims in this case have been dismissed. The parties are ORDERED to confer and submit a joint status report, within fourteen days of this Order, recommending a schedule for proceeding with the remaining claims in the case.

**SO ORDERED**, this 6th day of September, 2018.

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/8
2)