FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

**OCT 0 3 2019**

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |
|---|---|
| WILLIAM R. DEAL, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 2:17-CV-209-RWS |
| TUGALO GAS COMPANY, INC., et al., | |
| Defendants. | |

## ORDER

This case is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint [Doc. No. 105], Defendants' Joint Motion for Leave to Amend Answer [Doc. No. 101], Defendants' Joint Motion for Partial Dismissal and Stay [Doc. No. 110], Defendant's Joint Motion for Partial Summary Judgment [Doc. No. 111], Plaintiff's Motion to Defer Ruling on Joint Motion for Partial Summary Judgment [Doc. No. 118], and Defendants' Joint Motion for Protective Order [Doc. No. 109]. For the reasons discussed below, the Court grants Defendants' Joint Motions for Partial Dismissal and Partial Summary Judgment [Doc. Nos. 110 and 111] and denies all other motions before the Court at this time.

## I.    Factual Background

This case arises out of a long-standing family dispute over a family-owned corporation, Defendant Tugalo Gas Company.   Plaintiff William R. Deal is a shareholder of Tugalo.

In 2005, the Company shares owned by Plaintiff, his mother, Elizabeth Gilmer Deal, and his brother, Robert Deal, were transferred into a North Carolina limited liability company, EGD Holdings.   Upon Elizabeth Gilmer Deal's death, EGD Holdings' shares were transferred into a revocable trust.   The revocable trust subsequently assigned the shares to its co-trustees, Plaintiff and Robert Deal, in their individual capacities.   As a result, Plaintiff now owns his shares in Tugalo outright.

Presently, Tugalo has 471 outstanding shares.   Defendant Thomas Gilmer owns 208 shares, with the remaining shares owned by Plaintiff (109.75), Robert Deal (109.75), Defendant Sarah Gilmer Payne (36), Defendant Etheldra Gilmer (6.5), and Defendant Bruce Stancil, Jr. (1), a former Vice President and Secretary of Tugalo. Tugalo holds 29 shares in treasury stock.

In 2012, EGD Holdings made a demand for action pursuant to O.C.G.A. § 14-2-742(2) on Tugalo.   EGD Holdings asserted that Defendant Thomas Gilmer, who is the President and Chairman of the Board of Directors of Tugalo, was committing corporate waste by: (1) directing Tugalo employees to perform maintenance on his

2

property without the company receiving any benefit in exchange; (2) using Tugalo funds to pay the Gilmers' debts and bills; and (3) leasing real property to the Company for which he was compensated.

In 2013, EGD Holdings filed a direct action in this Court against Thomas Gilmer for breach of fiduciary duty. See EGD Holdings v. Thomas Gilmer, Civil Action No. 2:13-CV-95-WCO, United States District Court, N.D. Georgia ("2013 EGD Holdings Case"). Thomas Gilmer filed a Motion to Dismiss, asserting EGD Holdings' direct shareholder action was improper. This Court, finding that EGD Holdings did not allege a special injury and that the justifications for a direct action were not present, agreed and dismissed the case.

On March 27, 2017, Plaintiff again made a demand for action pursuant to O.C.G.A. § 14-2-742(2) on Tugalo [Doc. No. 20-2]. In the Demand Letter, Plaintiff alleged the same conduct by Thomas Gilmer that formed the basis for the 2013 EGD Holdings Case and also alleged misconduct by the other individual Defendants. Following receipt of the Demand Letter, Tugalo's Board of Directors appointed a Demand Review Committee ("DRC") to investigate the allegations. The DRC consisted of two members: Carlton H. Jones, III and Bruce Stancil, Jr. The DRC determined that a shareholder's derivative action was not in the best interest of Tugalo.

3

Plaintiff filed the instant case on October 28, 2017 [Doc. No. 1]. Unlike the 2013 direct action, Plaintiff filed this Complaint against many Tugalo shareholders and employees, including Thomas Gilmer, Sarah Gilmer Payne, Etheldra Gilmer, Bruce Stancil, Jr., Ray Crenshaw (the current Vice President, Secretary, and a Director), and Lewis Smith (a Tugalo employee and an alleged former Director). Plaintiff's Amended Complaint contains numerous allegations concerning the dealings and behavior of Defendants.

Generally, Plaintiff alleges that Thomas Gilmer has abused his position and caused Tugalo to pay his personal expenses, extend benefits to him, and to incur numerous questionable charges for his family and the other individual Defendants. Plaintiff alleges that during their time as Officers and Directors of the Company, the other individual Defendants have overseen, acquiesced, and ratified the improper use of Company funds by Thomas Gilmer and have also enjoyed the benefits of similar improper expenditures. Plaintiff alleges that these are "de facto dividends" in lieu of the payment of properly-authorized dividends. In the Amended Complaint [Doc. No. 56], Plaintiff asserted seventeen claims:

(1)    Count One alleged Thomas Gilmer breached his fiduciary duty:
(2)    Count Two alleged Defendants Sarah Gilmer Payne, Etheldra Gilmer, Bruce Stancil, Jr., Ray Crenshaw, and Lewis Smith breached their fiduciary duties and aided and abetted Thomas Gilmer's breach of his fiduciary duty;
(3)    Count III alleged all Defendants committed fraud;

4

(4)    Count IV alleged all Defendants conspired to defraud, oppress, freeze out, and retaliate against Plaintiff;

(5)    Count V sought judicial dissolution of the company;

(6)    Count VI alleged Thomas Gilmer's conduct amounts to abuse of control;

(7)    Count VII alleged all Defendants are liable for wrongful distributions;

(8)    Count VIII asserted a claim for accounting based on the Directors' breach of their fiduciary duties;

(9)    Count IX was brought on behalf of the Company and seeks to enjoin any unlawful conveyance, assignment, or transfer of corporate assets or other unlawful transactions;

(10)   Count X asked the Court to set aside the allegedly unlawful payments;

(11)   Count XI alleged all Defendants engaged in wrongful conversion of Company assets;

(12)   Count XII sought appointment of an auditor to account for funds supposedly distributed for the benefit of Defendants;

(13)   Count XIII sought a declaratory judgment declaring the Stancil stock transfer invalid because it violated Company bylaws;

(14)   Count XIV alleged all Defendants were unjustly enriched by funds they have wrongfully received;

(15)   Count XV alleged Defendant Stancil must return any payment he received for his shares;

(16)   Counts XVI sought punitive damages pursuant to O.C.G.A. § 51-12-5.1;

(17)   Count XVII sought attorneys' fees and costs of litigation.

In response to the First Amended Complaint, on January 2, 2018, members of the Tugalo Board of Directors appointed a Litigation Review Committee ("LRC") [Doc. No. 34-2]. The LRC consisted of two Tugalo Board members: Carlton H. Jones, III and Robert Aycock [Doc. Nos. 34-4 and 34-5]. The LRC was vested with full and final authority to investigate, review, and analyze the allegations in the First Amended Complaint. On February 28, 2018, the LRC notified the Board and

Tugalo's counsel that a derivative action was not in Tugalo's best interest [Doc. No. 34-6]. The LRC recommended that this action be dismissed [Id.].

On December 13, 2017, Defendants moved to partially dismiss Plaintiff's Amended Complaint on several grounds. Defendant Tugalo also moved to dismiss Plaintiff's derivative claims, based upon the recommendation of the LRC [Doc. No. 34]. On September 6, 2018, the Court granted Defendants' Motions to Dismiss in part [Doc. No. 54]. The parties have now filed additional motions, which the Court will address in turn.

## II. Motion for Leave to File Amended Complaint [Doc. No. 105]

Plaintiff seeks leave of the Court to file a Second Amended Complaint [Doc. No. 105]. Defendants object, arguing that Plaintiff has not demonstrated good cause as required by Federal Rule of Civil Procedure 16(b) and has unduly delayed, so Federal Rule of Civil Procedure 15 precludes the amendment sought. The Court agrees with Defendants.

When a plaintiff files a "motion to amend . . . after the scheduling order's deadline, []he must first demonstrate a good cause under Rule 16(b) before [a court] will consider whether the amendment is proper under Rule 15(c)." Callwood v. Jones, 727 Fed. App'x 552, 557 n.6 (11th Cir. 2018) (citing Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)). Under Rule 16(b), a party may modify

a scheduling order "only for good cause and with the judge's consent." Id. at 557. The good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension. Sosa, 133 F.3d at 1419. "If a party was not diligent, the good cause inquiry should end." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (cited with approval by Sosa, 133 F.3d at 1418). To determine diligence, courts look to both when the information leading to the proposed amendment became available, as well as how quickly the plaintiff moved to amend following the discovery of any new evidence. EEOC v. Exel, Inc., 259 F.R.D. 652, 655 (N.D. Ga. 2008) (citing Sosa, 133 F.3d at 1419).

Here, according to the scheduling order, amendments to the pleadings were to be filed no later than October 20, 2018. [Doc. No. 65]. Because Plaintiff's motion was filed on March 27, 2019, more than five months after the deadline, he must demonstrate good cause. Plaintiff seeks to add a claim based on "newly discovered evidence" in the form of Litigation Review Committee reports and a Demand Review Committee report. But Plaintiff has had copies of these reports since July 11, 2018, more than three months before the deadline for amendment and eight months before he filed this motion. Because Plaintiff did not act diligently in seeking amendment, his Motion for Leave to File Amended Complaint [Doc. No. 105] is DENIED.

### III.   Motion to Amend Answer [Doc. No. 101]

Defendants seek leave of the Court to Amend their Answers to add a counterclaim [Doc. No. 101]. Plaintiff objects, arguing that Defendants' proposed amendment would be futile. [Doc. No. 104 at 6]. The Court agrees with Plaintiff and denies Defendants' motion.

Leave to amend a pleading may be denied under Rule 15(a) when the amendment would be futile. Hall v. United Ins. Co. of America, 367 F.3d 1255, 1263 (11th Cir. 2004). Finding an amended answer futile is effectively a legal conclusion that the proposed defense would necessarily fail. Sagastume v. Wal-Mart Stores, Inc., No. 1:07-cv-02560-BBM-AJB, 2008 WL 11334468, at *2 (N.D. Ga. May 29, 2008), report and recommendation adopted, No. 1:07-CV-2560-BBM, 2008 WL 11337756 (N.D. Ga. July 8, 2008).

Here, Defendants seek to add a counterclaim alleging that the transfer of Tugalo shares from the revocable trust to Plaintiff was void *ab initio* under Tugalo's bylaws. [Doc. No. 101 at 9–10]. As Plaintiff points out, however, no actual "sale of shares" occurred during the transfer from the trust to Plaintiff. [Doc. No. 104 at 7]. Rather, the stock was transferred from Plaintiff's mother to the revocable trust upon her passing, then ultimately transferred from the trust to Plaintiff and his brother. Additionally, the remedy Defendants seek through the proposed

8

counterclaim defies logic: if the transfer of shares from the trust to Plaintiff was void *ab initio*, then Plaintiff currently possesses no shares in his individual capacity that he would be able to offer to the board for sale. Yet Defendants explicitly request that the Court require Plaintiff to provide "Tugalo Gas shareholders an opportunity to purchase his shares at the price Plaintiff paid for them." [Doc. No. 101-4]. Not only did Plaintiff not actually pay a price to acquire the shares at issue—he received them via direct transfer—but the remedy Defendants seek would be impossible to impose if the transfer were void *ab initio* because Plaintiff would have no shares in his possession. Accordingly, the Court finds that Defendants' proposed counterclaim would be futile, and their Motion to Amend Answer [Doc. No. 101] is DENIED.

## IV.    Joint Motion for Partial Dismissal and Stay [Doc. No. 110]

Defendants filed a Joint Motion for Partial Dismissal of the three counts in the Amended Complaint seeking equitable remedies under Georgia law [Doc. No 110]. Specifically, Defendants argue that the Court should abstain from exercising jurisdiction over Counts V (judicial dissolution), VIII (accounting), and XII (request for an auditor). Plaintiff objects, arguing that abstention is inappropriate for multiple reasons which the Court will address in turn. For the following reasons, the Court agrees with Defendants and abstains from exercising jurisdiction over these

equitable claims under Burford v. Sun Oil Co., 319 U.S. 315 (1943).  Accordingly, Counts V, VIII, and XII are dismissed.

Under Burford, a federal court may abstain from exercising jurisdiction in cases of equity in order to avoid interfering with proceedings or orders of state administrative agencies.  Burford, 319 U.S. at 332; New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989).  The United States Supreme Court has identified two scenarios that mandate abstention by federal courts: "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import . . .'; or (2) where the 'exercise of federal review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  New Orleans Pub. Serv., Inc., 491 U.S. at 361 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 815 (1976)).  "The purpose of Burford abstention is to 'protect[] complex state administrative processes from undue federal interference . . . .'"  Boyes v. Shell Oil Products Co., 199 F.3d 1260, 1265 (11th Cir. 2000) (quoting New Orleans Pub. Serv., Inc., 491 U.S. at 362).  In considering whether to abstain from exercising jurisdiction over a matter under Burford, federal district courts must balance the federal interests in retaining jurisdiction over the dispute against the state's interests in independently acting to address a matter of

state concern. <u>Burford</u>, 319 U.S. at 334; <u>Webb v. B.C. Rogers Poultry, Inc.</u>, 174 F.3d 697, 700 (5th Cir. 1999). The Supreme Court cautions, however, that abstention is an extraordinarily "narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Colorado River Water Conservation Dist.</u>, 424 U.S. at 813; <u>Met. Life v. Lockette</u>, 155 F.3d 1339, 1341 (11th Cir. 1998) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

Plaintiff first argues that Defendants' motion must be denied because it is untimely. [Doc. No. 115 at 2]. This argument misses the mark. As Defendants correctly point out in their reply [Doc. No. 120 at 4], abstention under <u>Burford</u> cannot be waived and may be raised at any time, including on appeal or by the court *sua sponte*. See <u>Lentz v. Trinchard</u>, 730 F. Supp. 2d 567, 587 (E.D. La. 2010) (stating that "<u>Burford</u> abstention may be raised at any time, including on appeal, and it may be raised by a court sua sponte" and finding that parties had not waived the right to argue that <u>Burford</u> abstention was appropriate despite first raising the argument after filing a motion for summary judgment) (citing <u>Munich Am. Reinsurance Co. v. Crawford</u>, 141 F.3d 585, 588 (5th Cir. 1998)); <u>see also</u> <u>BT Inv. Managers, Inc. v. Lewis</u>, 559 F.2d 950, 954 n.16 (5th Cir. 1977) ("By its nature, the abstention issue is raised either by a defendant or by the court sua sponte).

Plaintiff then argues that the Burford doctrine does not apply to Georgia corporations [Doc. No. 115 at 2–3] and that abstention is unnecessary [Id. at 8]. Whether Burford should be applied in cases involving judicial dissolution is a question of first impression in this district.  This question has been addressed in numerous other districts, however, and it appears that each federal court addressing such issue has either abstained or noted that abstention would be appropriate assuming jurisdiction existed.  See, e.g., Patel v. Oakwin Lodging Inc., No. 3:08-cv-206-J-32MCR, 2008 WL 3365233, at *1 (M.D. Fla. Aug. 8, 2008) ("The Court abstains for the same reason all other federal courts abstain in corporate dissolution cases: to avoid infringing on the state's important interest in overseeing the continued existence of corporations created under its laws.") (citing Caudill v. Eubanks, 301 F.3d 658, 665 (6th Cir. 2002) (affirming district court's abstention from hearing action for corporate dissolution and accounting)).  Though not controlling, the Court finds persuasive that, at the very least, the majority of federal district courts have abstained under Burford when faced with an issue of judicial dissolution and chooses to do so as well.

Finally, Plaintiff argues that even if the Court were to grant the Motion, Defendants are not entitled to a stay of the claims that would remain before the Court in light of the plain language of Georgia's dissolution statute, O.C.G.A. § 14-2-1430.

[Doc. No. 115 at 14].   For the reasons addressed in the discussion below, this argument is unavailing.   As Defendants recognize in their reply, to the extent their Joint Motion for Partial Summary Judgment [Doc. No. 111] is granted, no stay is required as to the equitable claims remaining in Plaintiff's Complaint.   [Doc. No 120 at 13].   Accordingly, because the Court elects to abstain from adjudicating these equitable claims under <u>Burford</u>, Defendant's Partial Motion to Dismiss [Doc. No. 110] is GRANTED.

## V.   Joint Motion for Partial Summary Judgment [Doc. No. 111]

Defendants filed a Joint Motion for Partial Summary Judgment.   [Doc. No. 111].   Specifically, Defendants argue that no genuine dispute as to a material fact exists with respect to Counts III, IV, VII, XVI, and XVII.[1]   [Id. at 2].   For the reasons discussed below, Defendants' Motion for Partial Summary Judgment is granted.

### A.   Motion to Defer Ruling [Doc. No. 118]

Plaintiff filed a Motion to Defer Ruling on Defendants' Joint Motion for

---

[1]   Defendants also contest the timeliness of either Count VIII or XII, though it is unclear for which specific count Defendants seek summary judgment as they initially list Count XII in their introduction [Doc. No. 111 at 2], but then argue for Count VIII in their discussion [Id. at 24].   They then switch to arguing for summary judgment on Count XII in their reply.   [Doc. No. 124 at 13].   Regardless, as discussed above, the Court abstains from ruling on either claim after granting Defendants' Partial Motion to Dismiss [Doc. No. 110] and will therefore refrain from discussing either count in the context of summary judgment.

Partial Summary Judgment until after the close of discovery pursuant to Fed. R. Civ. P. 56(d).  [Doc. No. 118].  Plaintiff argues that Defendants are "stonewalling" Plaintiff's attempts at discovery and that Defendants' Motion for Partial Summary Judgment is premature.  [Id. at 1].  Defendant argues in response that Plaintiff has not met Rule 56(d)'s standard for requisite specificity [Doc. No. 123 at 3] and, additionally, that any evidence pertinent to the grounds for summary judgment rests solely in Plaintiff's possession [Doc. No. 123 at 6].  The Court agrees with Defendants and denies Plaintiff's Motion to Defer Ruling.

Generally, summary judgment should not be granted until the opposing party has had an adequate opportunity to conduct discovery.  Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 843 (11th Cir. 1989).  However, Rule 56 provides that a defendant may move for summary judgment at "any time."  Id.  Rule 56(d) (formerly Rule 56(f)) allows a party opposing summary judgment to move the court for additional discovery necessary to oppose the motion.  Id.  The party seeking additional discovery must "specifically demonstrate 'how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact.'"  Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525, 527 (11th Cir. 1983) (internal citations omitted).  The party "'may not simply

rely on vague assertions that additional discovery will produce needed, but unspecified, facts."' Id. (internal citations omitted).

Here, Plaintiff has done just that: rely on vague assertions that, "after further discovery, he will be able to show material issues of fact on the specific arguments Defendants raise in their pending motion." [Doc. No. 118 at 5]. In his attached affidavit, Plaintiff's counsel repeatedly alleges that he has been "unable to develop evidence necessary to fully contradict Defendants' arguments." [Doc. No. 118-3 ¶¶ 5, 8, 10, 13]. Plaintiff has not, however, affirmatively asserted what documents Plaintiffs may uncover through additional discovery, with the lone exception of Tugalo financial statements. [Id. ¶ 12]. In fact, Plaintiff directly states, "[i]t would be difficult to describe all of the topics upon which Plaintiff still needs to conduct discovery." [Doc. No. 118 at 5]. Such a mere "'hope' or 'hunch' that evidence creating an issue of fact will emerge . . . is insufficient to warrant discovery under Rule 56[d]." A.B. v. Clarke Cty. Sch. Dist., No. 3:08-CV-041, 2009 WL 902038, at *8 (M.D. Ga. Mar. 30, 2009).

Additionally, any evidence that Plaintiff justifiably relied upon Defendants' allegedly fraudulent representations would solely lie in Plaintiff's possession. See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1219 (11th Cir. 2000) (holding the trial court did not abuse its discretion in granting summary judgment on a trademark

claim without allowing the plaintiff to conduct additional discovery because the court had an adequate record to grant the motion and any evidence of plaintiff's use of the trademark would have been in his possession, not the defendant's). For the reasons discussed below, the Court believes that Plaintiff cannot show a genuine dispute of material fact on the element of justifiable reliance, so Plaintiff has failed to demonstrate how postponement of a ruling on Defendants' motion will enable him to rebut the showing of an absence of a genuine issue of fact. See O'Brien v. Seay, 263 F. App'x 5, 7 (11th Cir. 2008). Accordingly, Plaintiff's Motion to Defer Ruling [Doc. No. 118] is DENIED.

## B.  Bases for Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).

Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the

moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### 1.    Fraud (Count III)

First, Defendants move for summary judgment as to Plaintiff's fraud claim. Under Georgia law, fraud requires proof of five elements:

> (1) that the defendant made the [alleged] representations; (2) that at the time [the defendant] knew they were false; (3) that [the defendant] made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the [alleged] representation[s]; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of [the alleged representations] having been made.

Botes v. Weintraub, No. 1:08-cv-01341-CAM, 2010 WL 966864, at *4 (N.D. Ga. Mar. 12, 2010), aff'd, 463 F. App'x 879 (11th Cir. 2012) (citing Parrish v. Jackson W. Jones, P.C., 629 S.E.2d 468, 471 (Ga. Ct. App. 2006)).  In order to survive a motion for summary judgment, some evidence must exist on each element of fraud from which a rational jury could find for the plaintiff.  nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC, 887 F. Supp. 2d 1240, 1272 (N.D. Ga. Aug. 14, 2012); Bogle v. Bragg, 548 S.E.2d 396, 399–400 (Ga. Ct. App. 2001).

Throughout his response, Plaintiff repeatedly asserts that he "has been denied the opportunity to conduct discovery to develop facts to contradict Defendants' factual assertions," and therefore deserves "the opportunity to complete discovery before the Court considers Defendants' motion." [Doc. No. 117 at 2].  For the

reasons discussed above, the Court is not moved by this argument. Plaintiff is the only party in control of potential evidence that may show a genuine dispute of material fact as to multiple elements of his fraud claim. Specifically, Plaintiff is the only party that may present evidence showing that he justifiably relied on any of the alleged misrepresentations by Defendants. Though whether Plaintiff has produced sufficient evidence to create a genuine dispute of material fact to many of these elements remains hazy at best, the Court focuses its discussion solely on the element of justifiable reliance.

"In order to prove justifiable reliance, the plaintiff must show that he exercised his duty of due diligence." Hanlon v. Thornton, 462 S.E.2d 154, 156 (Ga. Ct. App. 1995) (internal citations omitted). In their motion, Defendants contest five instances of alleged fraud identified in Plaintiff's First Amended Complaint: (1) an April 2011 letter to Plaintiff's brother Robert Deal; (2) a January 2013 letter to EGD Holdings; (3) minutes from the 2014 Board of Directors Meeting; (4) Tugalo's accounting records and tax returns; and (5) failure of the Tugalo directors to disclose personal expenses to Plaintiff. [Doc. No. 111 at 8–9]. Plaintiff contends in response that Defendants ignored three other specific bases for fraud: (1) a 2013 public statement in open court by Defendant Thomas Gilmer's attorney; (2) representations contained within the "Hay Report"; and (3) "Defendants' misrepresentation" concerning

alleged amendments to company bylaws. [Doc. No. 117 at 5–6].[2] Regardless of the number of specifically identified instances of alleged fraud, the evidence on the record makes abundantly clear that Plaintiff never trusted, let alone relied upon, the alleged misrepresentations or omissions by Defendants. In fact, Plaintiff, as a member of EGD Holdings, consistently sought action against Defendants after each alleged misrepresentation. Following the April 2011 letter, EGD Holdings made a demand for action against Defendants in October 2012. EGD then filed a complaint against Defendant Thomas Gilmer in a direct action in May 2013, before receiving any results from the investigation referenced in the January 2013 letter.

Plaintiff argues that EGD's lack of reliance on the alleged misrepresentations may not be imputed to Plaintiff, yet he cites to no authority in support of his position.[3] Plaintiff then argues that Defendants have presented no evidence showing

---

[2] Defendants correctly assert in reply that these three "ignored" bases of alleged fraud are not specifically pled under Count III in Plaintiff's First Amended Complaint. [Doc. No. 20 ¶¶ 119–29]. Rather, Plaintiff attempts to rely upon ¶ 118, which "repeats and realleges the allegations set forth" in the preceding paragraphs. [Id. ¶ 118]. Because Count III survived Defendants' initial Motion to Dismiss [Doc. No. 54], the Court will consider these additional instances of alleged fraud for the sake of the present motion.

[3] As Defendants point out, Plaintiff's arguments for the other necessary elements of fraud directly contradict such an argument: "Plaintiff argues Defendants intended for him to rely on a 2011 letter to Robert Deal because both were members of EGD at the time." [Doc. No. 124 at 5]. In essence, Plaintiff attempts to rely on imputed knowledge through EGD for some elements but denies that such knowledge may be imputed for other elements.

that Plaintiff personally (not by virtue of his position at EGD) did not rely on the alleged misrepresentations. However, Plaintiff is the only party that could actually produce such evidence showing either personal reliance or a lack thereof. See Leigh, 212 F.3d at 1219. Despite this fact and the very nature of the present motion, Plaintiff has failed to produce any evidence to support his position, instead choosing to state simply that he "can present evidence showing that he relied on [these] misrepresentations." [Doc. No. 117 at 16]. Such conclusory allegations, without specific supporting facts, carry no probative value when contesting a summary judgment motion. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).

Plaintiff's arguments rest on strained logic and conclusory assertions without offering specific evidence in support. If such evidence indeed exists, Plaintiff is the only party capable of producing it. Because Plaintiff has failed to present any evidence to rebut Defendants' motion, thus failing to create a genuine dispute as to a material fact, Defendant's Motion for Partial Summary Judgment [Doc. No. 111] as to Count III is GRANTED.

### 2. Unlawful Distribution (Count VII)

Defendants then argue that Plaintiff's claim for unlawful distribution in Count VII is barred by the applicable statute of limitations. Under Georgia law, a claim for recovery of wrongful distributions must be raised "within two years after the date on

which the effect of the distribution was measured under subsection (e) or (g) of Code Section 14-2-640." O.C.G.A. § 14-2-832(b). Pursuant to this code section, the effect of such distribution is measured according to the "date the distribution is authorized if payment occurs within 120 days after the date of authorization." O.C.G.A. § 14-2-640(e). The alleged unlawful distribution at issue here is the transfer of the Stancil Family Stock, which was redeemed by Tugalo in 2009 and then ratified by the board in January 2012. Accordingly, the statute of limitations under Section 14-2-640(e) ran in January 2014.

Plaintiff, however, argues that the statute of limitations is "tolled by Defendants' fraudulent conduct surrounding such distributions." [Doc. No. 117 at 24]. To toll the statute of limitations, the fraud "must have debarred or deterred plaintiff from bringing the suit timely." Charter Peachford Behavioral Health Sys. v. Kohout, 504 S.E.2d 514, 522 (Ga. App. 1998) (internal citation omitted). "Some trick or artifice must be employed to prevent inquiry, elude investigation, or mislead and hinder the plaintiff from obtaining information necessary to reveal the existence of a cause of action." Id. Where a plaintiff knows the underlying facts of the claim, alleged fraud cannot toll a statute of limitations. See Id. at 523 (holding "plaintiff was not debarred or deterred from knowing that she had a cause of action for an alleged misdiagnosis by defendants-appellants' acts or omissions" where plaintiff

"knew the facts of her past; knew that [her doctor] diagnosed her as having a MPD . . . and knew that she was treated based upon such diagnosis"); see also Leathers v. Timex Corp., 330 S.E.2d 102, 104 (Ga. App. 1985) (holding alleged fraud did not toll the statute of limitations where plaintiff "knew for certain in July 1977, that his pension was computed under the old pension plan and he failed to bring his action until . . . more than five and one-half years after discovery of the alleged fraud.").

Here, Plaintiff repeatedly admits knowing about the transfer of the Stancil Family stock as early as 2011 and no later than October 17, 2015. [Docs. No. 107 at 51:1-24, 58:1-10, 100:23-101:1; 111-13 at 3]. Plaintiff disputes any such knowledge about the sale because letters communicating this information were addressed to counsel for EGD Holdings, not Plaintiff directly, and knowledge cannot be imputed to Plaintiff through the company. [Doc. No. 117 at 24]. This argument directly contradicts Plaintiff's documented admissions on record. [Doc. No. 111-13 at 3]. Because Plaintiff had knowledge of the underlying facts of the alleged fraud, and Plaintiff cannot otherwise succeed on his fraud claim for the reasons discussed above, the statute of limitations for Plaintiff's unlawful distribution claim was not tolled. Therefore, Count VII is barred by the statute of limitations under

O.C.G.A. §§ 14-2-640 and 14-2-832.  Accordingly, Defendants' Motion for Partial Summary Judgment [Doc. No. 111] as to Count VII is GRANTED.

### 3.    Dependent Claims (Counts IV, XVI, and XVII)

Plaintiff's claims under Counts IV, XVI, and XVII allege civil conspiracy and claims for attorneys' fees and punitive damages respectively.  Under Georgia law, each of these claims requires an underlying tort in order to proceed.  See Knieper v. Forest Grp. United States, Inc., No. 4:15-cv-0222-HLM, 2016 WL 9450074, at *11 (N.D. Ga. June 16, 2016) ("Where a plaintiff's underlying tort claims fail, the civil conspiracy claim also must fail.") (internal citations omitted); Ga. Dep't of Corr. v. Couch, 759 S.E.2d 804, 810 (Ga. App. 2014) ("O.C.G.A. § 13-6-11 does not create an independent cause of action [for attorneys' fees]."); Benefit Support, Inc. v. Hall County, 637 S.E.2d 763, 771 (Ga. App. 2006) (holding a plaintiff cannot recover punitive damages when the underlying tort claim fails as a matter of law).  For the reasons discussed above, Plaintiff's fraud claim fails as a matter of law.  Accordingly, Plaintiff's claims for civil conspiracy, attorneys' fees, and punitive damages cannot survive.  Defendants' Motion for Partial Summary Judgment [Doc. No. 111] as to Counts IV, XVI, and XVII is GRANTED.

**VI.   Joint Motion for Protective Order [Doc. No. 109]**

Defendants filed a Joint Motion for Protective Order to limit Plaintiff's discovery requests. [Doc. No. 109]. Because the Court grants Defendants' Joint Motions for Partial Summary Judgment [Doc. No. 111] and Partial Dismissal [Doc. No. 110], no claims remain before the Court in the present action. Accordingly, Defendants' Joint Motion for Protective Order [Doc. No. 109] is DENIED as moot.

**VII.   Conclusion**

For the reasons discussed above, Plaintiff's Motion for Leave to File Amended Complaint [Doc. No. 105], Defendants' Motion to Amend Answer [Doc. No. 101], Plaintiff's Motion to Defer Ruling [Doc. No. 118], and Defendants' Joint Motion for Protective Order [Doc. No. 109] are DENIED. Defendants' Joint Motions for Partial Dismissal [Doc. No. 110] and Partial Summary Judgment [Doc. No. 111] are GRANTED, and the Clerk is DIRECTED to enter judgment and close this action.

**SO ORDERED** this _3rd_ day of October, 2019.

_____
**RICHARD W. STORY**
United States District Judge