[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14336

_____

D.C. Docket No. 2:17-cv-00209-RWS

WILLIAM R. DEAL,

Plaintiff - Appellant,

versus

TUGALO GAS COMPANY, INC.,
THOMAS GILMER,
SARAH GILMER PAYNE,
ETHELDRA GILMER,
BRUCE STANCIL, JR.,
et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 19, 2021)

Before MARTIN, NEWSOM and BRANCH, Circuit Judges.

NEWSOM, Circuit Judge:

This kitchen-sink appeal stems from a district court's rejection of a kitchen-sink lawsuit.  William Deal owns shares in a family-owned Georgia corporation, Tugalo Gas Company.  Deal sued Tugalo, his cousin and Tugalo President Thomas Gilmer, and Tugalo's directors in a 17-count complaint, alleging (in essence) that Gilmer misappropriated corporate funds and that the company's board let it happen.  In two separate orders issued about a year apart, the district court rejected all of Deal's substantive claims—some on a motion to dismiss and the remainder at summary judgment.  The district court separately declined to adjudicate three equitable counts—for judicial dissolution, an accounting, and appointment of an auditor—under the long-lost (or nearly lost) "*Burford* abstention" doctrine.

On appeal, Deal presents a litany of arguments spanning eight separate issues arising out of the district court's two orders.  Because the district court correctly disposed of all of Deal's substantive claims, we will affirm in substantial part.  But because the district court shouldn't have abstained under *Burford* from deciding the three equitable counts, we will also reverse in part and remand for further proceedings.

## I

## A

Tugalo Gas Company is a closely held, family-owned Georgia corporation. Plaintiff William Deal alleges that his cousin and Tugalo President Thomas Gilmer

misused company funds to pay for personal expenses.  He also asserts that other

defendants in the case—Tugalo shareholders, directors, and employees, some of

whom are related to Deal and Gilmer—either abetted Gilmer's misconduct or

engaged in wrongdoing of their own.

Through a holding company, Deal first made demand on Tugalo's board in

2012, alleging corporate fraud based on Gilmer's use of company money to pay

personal expenses.  Without waiting for Tugalo's board to investigate his claim,

Deal went ahead with a direct shareholder action against Gilmer.  That suit was

dismissed when the court found that Deal's direct suit was improper.  Undeterred,

Deal made demand on Tugalo's board again in 2017, once again alleging

misconduct by Gilmer and others.  In response to Deal's allegations, Tugalo

formed a Demand Review Committee (DRC), which determined that a shareholder

derivative action was not in Tugalo's best interest.

Deal then filed the suit that underlies this appeal.

## B

Deal's complaint asserted a laundry list of claims, totaling 17 counts against

seven defendants, including Tugalo.  The counts were a mix of direct and

derivative claims and requests for equitable relief.  In response to Deal's

complaint, Tugalo's board appointed a Litigation Review Committee (LRC)

consisting of Carlton H. Jones, III, who had earlier served on the DRC, and Robert

Aycock, an independent director.  The LRC recommended that Tugalo move to dismiss Deal's action—at least to the extent it pleaded derivative claims—which Tugalo then asked the district court to do.

The district court resolved Deal's case in two orders.  First, at the motion-to-dismiss stage, the court held that about half of Deal's counts could be pursued only derivatively and then dismissed them because the LRC—after a reasonable, good faith investigation—had concluded that a shareholder derivative action wasn't in Tugalo's best interest.  Second, at summary judgment, the district court ruled for Tugalo on the remaining counts, abstained from adjudicating any equitable counts, and entered judgment in Tugalo's favor.  In both orders, the district court denied Deal's requests to postpone decision while he sought additional discovery.

## II

On appeal, Deal challenges pretty much every ruling that didn't go his way. We'll first address the issues arising out of the motion-to-dismiss order and then turn to the summary-judgment order.

## A

We start with Deal's derivative claims.  Our review of the district court's dismissal of those claims presents the most involved issue in this appeal, as it implicates the sometimes convoluted process by which a shareholder makes "demand" on a corporation as a prerequisite to bringing a derivative action.  We'll

briefly summarize that process and then assess the district court's dismissal of Deal's derivative counts.

A corporation's directors and officers owe fiduciary duties to the company; if a shareholder believes that they have breached those duties, he can bring a "derivative suit" on behalf of the corporation, for the harm done to it. *See* Stephen M. Bainbridge, *Corporate Law* 207 (3d ed. 2002). In a derivative suit, the cause of action belongs to the corporation, rather than to the individual shareholder-plaintiff, and any recovery thus goes to it. *Id*. Because the cause of action is ultimately the corporation's own, a shareholder can bring suit only in the event that a company's board chooses not to pursue litigation. *Id*. at 225. Thus, to bring a derivative suit, the shareholder usually must first make "demand" on the corporation—that is, ask the board to bring a suit on the company's behalf. *Id*. By contrast, if a shareholder believes that he has been harmed in his individual capacity and separately from any injury to the corporation, then he can bring a "direct suit." *Id*. at 205. Because in that instance the injury is personal to the shareholder, there is no demand requirement, but there are other hurdles—among them, the shareholder must show that his injury is distinct from any that the corporation or other shareholders have suffered. *Id*. at 205–06.

State law governs the process for bringing derivative suits and, in particular, for making demand. *See Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 101

(1991).  Under Georgia law, which applies here, a shareholder can file a derivative suit if, and only if, (1) he has made a written demand on the corporation "to take suitable action" and (2) the corporation has refused to do so.  O.C.G.A. § 14-2-742. If, following rejection of his demand, the shareholder proceeds to file a derivative suit, the corporation may then move to dismiss it if a special committee made up of independent directors—which, consistent with Tugalo's nomenclature, we'll call a "litigation review committee" (LRC)— "ma[kes] a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation."  O.C.G.A. § 14-2-744(a).  In order to proceed, the shareholder-plaintiff must then come forward with evidence showing that the LRC wasn't independent or didn't make its determination to recommend dismissal in good faith after a reasonable investigation.  *See Thompson v. Scientific Atlanta, Inc.*, 621 S.E.2d 796, 799 (Ga. Ct. App. 2005).

Now, to Deal's complaint.  Deal brought Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII—a mix of breach-of-fiduciary-duty, abuse-of-control, unlawful-conveyance, conversion, unjust-enrichment, and similar claims—both derivatively and directly.  He first contends that the district court erred in dismissing his derivative claims in those counts.  The district court dismissed Deal's derivative claims because, in its view, Tugalo's LRC had

6

undertaken a reasonable, good-faith investigation and determined that a derivative action wasn't in the company's best interest.  The district court also denied Deal's motion to defer ruling on this issue while he gathered additional discovery.

Deal challenges both of those decisions.  With respect to the former, Deal argues that the LRC wasn't independent because it relied too heavily on the previously formed DRC's report and because one of its members, Carlton Jones, had also served on the DRC with Bruce Stancil, one of the defendants in this case.  Deal also argues that the LRC didn't undertake a reasonable, good-faith investigation for a multitude of reasons, most of which reduce to his disagreement with the LRC's recommendation to refuse his demand.  With respect to the latter, Deal contends that he should have gotten more discovery and that the district court should have deferred ruling on Tugalo's motion to dismiss while he did so.[1]

We'll start with the first issue—and, in particular, with independence.  As a general matter, Georgia courts require that a member of an LRC be both

---

[1] We review the district court's decision to refuse Deal's request for further discovery only for abuse of discretion.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  The parties dispute the standard applicable to the district court's dismissal of Deal's derivative claims.  Citing decisions from Georgia's intermediate appellate court construing O.C.G.A. § 14-2-744, which prescribes the requirements for making demand on a Georgia corporation, Tugalo insists that we should review only for abuse of discretion.  *See, e.g.*, *Benfield v. Wells*, 749 S.E.2d 384, 386 (Ga. Ct. App. 2013).  Deal counters that, in applying an abuse-of-discretion standard, Georgia's appellate courts have relied on Delaware caselaw that the Delaware courts have since rejected.  Despite the parties' shared assumption, it's not apparent to us that *state* law should govern the standard of review applicable to an appeal in *federal* court.  Under *Erie*, "federal courts sitting in diversity apply state substantive law and federal procedural law"—so the relevant question is whether § 14-2-744's standard of review constitutes substantive or

disinterested—meaning that he has no personal interest in the challenged

transaction—and independent—meaning that he isn't predisposed to favor the

defendants because of a personal or other relationship. *Benfield v. Wells*, 749

S.E.2d 384, 387 (Ga. Ct. App. 2013).  Under Georgia law, a director serving on an

LRC can be independent even if (1) he was nominated or elected by non-

independent directors, (2) he is a defendant in the derivative proceeding, or (3) he

previously approved the action, challenged in the derivative action so long as he

didn't receive a benefit from it.  O.C.G.A. § 14-2-744(c).

Here, LRC members Jones and Aycock were independent.  A majority of the

board's independent directors selected them to serve on the LRC, and they were

only chosen after the alleged misconduct occurred.  Neither has a financial stake in

the litigation or an interest in the outcome.  Deal's argument that Jones is

"interested" because he drafted the original DRC report is unavailing; it rests on

the conjecture that "perhaps Jones formed a personal relationship with Stancil" and

that he formed a "prejudgment" about Deal's allegations.  But if Georgia law

permits a director who is himself a defendant in the litigation or who previously

approved a challenged transaction to serve on an LRC, *see* O.C.G.A. § 14-2-

---

procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  In any event, we needn't settle on a particular standard of review here because, for reasons explained in text, we hold that Deal's derivative claims fail even under a de novo standard.

744(c), we fail to see how it could deem insufficiently independent a director who "perhaps" has a personal relationship with one defendant and who drafted an earlier DRC report.  Likewise, Deal's contention that Aycock might be interested because his own company was a Tugalo customer and that he sometimes ran into defendant Gilmer at the airport rests on mere speculation.  Such speculation isn't evidence, and thus is insufficient to demonstrate the LRC's lack of independence.

On, then, to reasonableness and good faith, both of which depend on the thoroughness of the LRC's investigation and the nature of the claims in Deal's demand.  *See Millsap v. Am. Family Corp.*, 430 S.E.2d 385, 388 (Ga. Ct. App. 1993) (holding that a litigation committee acted reasonably and in good faith after a "detailed, documented investigation").  Here, Deal contends that the LRC didn't interview enough people (including him) or review enough documents and that it recommended dismissal even after it uncovered some wrongdoing.

The LRC's investigation here was both reasonable and conducted in good faith.  For starters, Tugalo is a small company embroiled in a family dispute.  That fact makes a focused, tailored investigation, like the LRC's here, entirely appropriate.  The LRC went through every paragraph and allegation of misconduct in the original complaint, interviewed those accused of wrongdoing and other employees with knowledge of Tugalo's finances, and concluded that a derivative action wasn't in the corporation's best interest.  While its report comprised only

9

about five pages, the LRC made sure that all the expenses that the complaint concretely alleged to be fraudulent were legitimate and that Gilmer and his sister had reimbursed the company for any other personal expenses.

Moreover, the LRC and its predecessor DRC weren't asleep at the wheel: They found some red flags and took action to address them. The DRC recommended that Gilmer reimburse Tugalo $25,000 for personal expenses that he took from the company. The LRC also found that a previous stock transfer to Bruce Stancil didn't strictly comply with Tugalo's bylaws.[2]

Although Deal has pointed to some evidence that Gilmer and his sister Sarah Gilmer Payne were playing fast and loose with company cash—both borrowed from the company to finance personal automobiles—our job isn't to evaluate whether the LRC was *correct* to recommend against a derivative action, but simply to determine whether the LRC had a valid *process* for deciding whether or not to do so. *See Maldonado v. Flynn*, 485 F. Supp. 274, 285 (S.D.N.Y. 1980) ("Even if the Committee were in error in its evaluation of the legal merits of this lawsuit … such an error does not necessarily taint either the adequacy or appropriateness of the investigation conducted or the good faith of the Committee."); *cf. Kamen*, 500 U.S. at 101 ("The purpose of requiring a precomplaint demand is to protect the

---

[2] The LRC ultimately concluded that the transfer wasn't actionable because it benefitted all shareholders by increasing their share ownership.

directors' prerogative to take over the litigation or to oppose it."). Deal might not like the outcome, but that doesn't mean that Tugalo's LRC failed to exercise its business judgment in investigating his claim and concluding that a derivative action wasn't in the corporation's best interest. *See Fed. Deposit Ins. Corp. v. Loudermilk*, 761 S.E.2d 332, 335 (Ga. 2014) ("If an officer or director has honestly exercised 'judgment' with respect to a business matter—that is, if her decision was made in a deliberative way, was reasonably informed by due diligence, and was made in good faith—the wisdom of the judgment cannot ordinarily be questioned in court."); *see also, e.g.*, *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (applying the business-judgment rule in the demand context).

Finally, and separately, the district court didn't err in denying Deal's motion to defer ruling on the dismissal of the derivative claims to allow for further discovery. Deal had no right to discovery at this stage of the litigation. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981) (noting that when evaluating a board's decision to recommend dismissal of a derivative suit, "[l]imited discovery *may* be ordered" to inquire into an LRC's independence and good faith (emphasis added)); *see also Kaplan v. Wyatt*, 499 A.2d 1184, 1192 (Del. 1985) ("In the *Zapata* context, … discovery is not by right, but by order of the Court, with the type and extent of discovery left totally to the discretion of the Court."); *Thompson*, 621 S.E.2d at 799 (adopting the *Zapata* standard). And Deal has failed

11

to provide any persuasive reasons for reversal.  All he says is that he raised "issues" regarding the LRC's investigation, but the fact that a party raises issues doesn't automatically entitle him to additional discovery.  As Deal concedes, we review the district court's decision only for an abuse of discretion, *World Holdings, LLC v. Fed. Republic of Germany*, 701 F.3d 641, 649 (11th Cir. 2012), and the court here was well within its discretion in declining to postpone its decision.

So, in short—while Deal may disapprove of the LRC's recommendation not to pursue a derivative action, he has failed to show even a modicum of taint.  And the district court reasonably rejected Deal's request to continue fishing for evidence that he had already had adequate time and opportunity to find.

## B

The district court also dismissed Deal's direct claims brought under Counts I, II, VI, VII, IX, X, XI, XIII, XIV, XV, XVI, and XVII on the ground that, by their very nature, they could be pursued only derivatively. It so held on the ground that Deal couldn't show, as Georgia law requires, that he had suffered any injury that was "separate and distinct" from the injury suffered by the corporation or its other shareholders.  *See Patel v. 2602 Deerfield, LLC*, 819 S.E.2d 527, 532 (Ga. Ct. App. 2018) ("[T]o set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or

a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation." (quotation marks omitted)).  The court also found that Deal's direct action could harm the rights of a non-party shareholder—namely, Deal's brother Robert— potentially leading to disproportionate recovery for Deal.[3]

In a novel-but-misguided threshold argument, Deal contends that the question whether a shareholder-plaintiff can maintain a direct claim runs not to the claim's merits but, instead, to the plaintiff's standing to sue under Article III. Accordingly, he insists, Tugalo had to move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction rather than, as it did, under Rule 12(b)(6) for failure to state a claim.  That is incorrect.  While courts may use the word "standing" in explaining whether a shareholder-plaintiff can bring a direct claim against a corporation, they do so not in the Article III sense, but rather in an altogether different corporate-law sense.  *See Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (noting that what it called the "so-called shareholder standing rule" is "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment."); *cf. also United*

---

[3] We review a court's dismissal of a complaint for failure to state a claim de novo.  *Almanza*, 851 F.3d at 1066.

*States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (explaining the distinction between Article III standing and Fourth Amendment "standing"). Deal has not provided, and we are not aware of, any support for the proposition that a shareholder's "standing" to bring a direct claim must—on pain of waiver—be challenged in a Rule 12(b)(1) motion rather than a Rule 12(b)(6) motion.

Deal's other arguments are more conventional, but equally unavailing. First, he contends that he suffered a "special injury" because the shareholder-defendants took special payments in lieu of dividends that Deal didn't get. But Deal's claim here is just a repackaged version of his "de facto distributions" claim, which, as we'll explain in more detail below, fails because Deal can't show that there actually *were* any such distributions. *See infra* at 15–16. Non-existent payments can't constitute a special injury.

Next, Deal claims that he falls into an exception that allows a shareholder to maintain a direct action, even in the absence of "special injury," when the corporation is closely held and "the circumstances show that the reasons for the general rule requiring a derivative suit do not apply." *Patel*, 819 S.E.2d at 532–33 (quotation marks omitted). The "reasons for the general rule" are:

> (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured shareholders by increasing their share values.

14

*Id*.

Contrary to Deal's contention, those reasons *do* apply here.  Deal's core allegations revolve around the actions of two main culprits—siblings Thomas Gilmer and Sarah Gilmer Payne.  There are three other shareholders who would have also been injured and whose interests must be protected—Etheldra Deal (Thomas and Sarah's mother), Bruce Stancil (a Gilmer family friend), and Robert (Deal's brother).  As the district court explained, the only other non-Gilmer and non-defendant shareholder, Deal's brother Robert, has chosen not to be part of the litigation, and his absence could lead to a disproportionate recovery for Deal.  Accordingly, Deal has shown neither that he suffered a special injury nor that he is exempt from the prudential reasons for requiring his claims to proceed derivatively.

## C

Next up: Deal's assertion in Count VII (to which we have already alluded) that Tugalo and its directors engaged in conflicted-interest transactions for the personal benefit of company insiders and that these transactions amounted to "de facto distributions."  The district court dismissed this claim because Deal hadn't alleged that Tugalo's board approved or otherwise assented to the supposed

distributions.  It did, however, allow a wrongful-distribution claim to go forward related to a payment made to Bruce Stancil.[4]

Georgia law makes a director who voted for an unlawful distribution liable to the corporation for any amount exceeding that which should have been paid out. O.C.G.A. § 14-2-832(a).  The problem here is that Deal can't point with specificity to any adequately pleaded allegations in his complaint that Tugalo board members assented to any so-called "de facto distributions."  The best he can do is a one-sentence paragraph in the relevant count of his complaint reciting a conclusion that "Defendants either voted for or assented to certain distributions described herein"—without specifying (1) which distributions the defendants approved or (2) for that matter, which distributions he's complaining about.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," like the ones contained in Deal's complaint, are insufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

\* \* \*

To recap our holdings stemming from the district court's September 2018 order:  We affirm the district court's decisions (1) to dismiss Deal's derivative claims after the LRC found that a shareholder lawsuit wasn't in the corporation's

---

[4] We review a dismissal for failure to state a claim de novo.  *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

best interest (and, separately, to deny Deal's motion to defer ruling on that issue);

(2) to hold that certain claims could not be pursued directly; and (3) to dismiss

Deal's "de facto distributions" claim.

Now, onto the district court's summary-judgment order.

### III

The final blow to Deal's case against Tugalo came at the summary-judgment

stage when the district court disposed of the remaining counts. We'll again march

through each of Deal's objections in turn.

### A

The district court granted summary judgment for Tugalo on Deal's fraud

claim on the ground that he couldn't show that he justifiably relied on any of

Tugalo's alleged misstatements.[5]  In doing so, the district court also denied Deal's

motion to defer ruling because any evidence that he justifiably relied on Tugalo's

misrepresentations would have been in his possession, obviating the need for

additional discovery.[6]

---

[5] Under Georgia law, a fraud claim comprises the following elements: (1) that the defendant made the misrepresentation; (2) that he knew was false; (3) that he acted with the intent to deceive the plaintiff; (4) that the plaintiff justifiably relied on the misrepresentation; and (5) that the plaintiff sustained damages as the proximate result of the misrepresentations. *Parrish v. Jackson W. Jones, P.C.*, 629 S.E.2d 468, 471 (Ga. Ct. App. 2006).  The district court focused on the justifiable-reliance element because Deal's evidence on the other elements was "hazy at best."

[6] We review the grant of summary judgment de novo, *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016), and the denial of a Rule 56(d) motion to defer ruling for abuse of discretion, *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).

Summary judgment is proper where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the *initial* burden of identifying those portions of the record that demonstrate the absence of a genuine issue—which it may "discharge[]" by pointing to "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the movant does so, the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact for trial. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). If the evidence is "merely colorable" or "not significantly probative," then summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

Deal asserts that the district court "relieved" Tugalo of its Rule 56 burden to demonstrate the absence of a genuine issue of material fact because the court focused only on his own failure to produce evidence of justifiable reliance. We disagree. Although the district court didn't couch its holding expressly in these terms, it undoubtedly found that Tugalo had discharged its burden by pointing to "an absence of evidence to support [Deal's] case"—specifically, to meet the requirement that Deal "justifiably relied" on any alleged misrepresentations. *See Celotex*, 477 U.S. at 325. The court explained that Tugalo had contested five specific instances of fraud and argued that there was no evidence to support them.

18

By contrast, the court found that Deal had not carried his burden of production to show evidence raising a genuine issue of material fact.  It explained that Deal "never trusted, let alone relied upon," anything the Tugalo defendants said because, either individually or through his former holding company, he "consistently sought action against Defendants after each alleged misrepresentation."  Deal asserts that the district court ignored his testimony.  But the district court didn't ignore Deal's testimony; rather, it held that none of his testimony supported a conclusion that he had justifiably relied on any alleged misstatement because the record evidence showed that he had simultaneously pursued litigation against the corporation for each such misstatement.  For example, Deal says that as the "basis for believing the financial records [and] the P&L statements" that he saw, he relied on, among other misrepresentations, a 2011 letter that Gilmer sent to Deal's brother Robert stating that he—Gilmer—would stop making personal charges to Tugalo.  At the same time, though, Deal and his holding company were either actively suing or making demand on Tugalo with respect to the same alleged misconduct.  There can be no justifiable reliance "[i]f a party has reason to doubt the truth of an oral representation or is informed of the truth before he acts." *Intercorp, Inc. v. Penzoil Co.*, 877 F.2d 1524, 1530 (11th Cir. 1989).  In short, there can't be a world in which Deal justifiably relied on alleged misstatements while simultaneously pursuing Tugalo for fraud.

Finally, the district court didn't abuse its discretion in denying Deal's motion to defer ruling at summary judgment on the fraud claim because Deal couldn't (and still can't) state with specificity which documents he hoped to find to support his fraud claim after further discovery.

## B

Next, an easy one:  Five months after the district court's deadline for amending pleadings, Deal sought to add a new wrongful-distribution claim to his complaint based on what he claimed was newly discovered evidence from the DRC and LRC reports.  But those reports were available to Deal approximately three months *before* the amendment deadline.  The district court didn't abuse its discretion in denying Deal's motion where he failed to act diligently to amend his complaint before the deadline.  *See In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014).

## C

We come at last to the final issue in this appeal—and the only one that requires us to remand to the district court.  Deal's complaint contained three equitable counts—Count V for judicial dissolution, Count VIII for an accounting, and Count XII seeking the appointment of an auditor.  Citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the district court abstained from adjudicating the judicial-dissolution count.  So far as we can tell, the district court never really

addressed the accounting and auditor-appointment counts, except to state (in passing) that it was abstaining from deciding them as well.[7]

Under the "*Burford* abstention" doctrine, a federal court can decline to adjudicate—and can dismiss—a case that is otherwise within its jurisdiction, but only in a very particular, and "narrow," set of circumstances.  *See Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (en banc) (emphasizing that *Burford* abstention is a "narrow doctrine").  In *Burford* itself, the Supreme Court held that a district court should have abstained from adjudicating an action in which a plaintiff sought to enjoin the execution of an order of the Texas Railroad Commission granting a landowner the right to drill a new oil well.  319 U.S. at 333–34.  It did so on the ground that the grant or denial of an oil well "so clearly involve[d] basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them."  *Id.* at 332.

Importantly here, both we and the Supreme Court have since explained that *Burford* abstention is warranted only when, by exercising its jurisdiction, a federal court would interfere with an ongoing state administrative proceeding or action.  *See Siegel*, 234 F.3d at 1173 ("*Burford* is implicated when federal interference would disrupt a state's effort, *through its administrative agencies*, to achieve

---

[7] We review a district court's decision to abstain for abuse of discretion.  *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000).

uniformity and consistency in addressing a problem." (emphasis added)).  The

Supreme Court has described the metes and bounds of the *Burford* abstention

doctrine specifically by reference to "the proceedings or orders of state

administrative agencies":

> Where timely and adequate state-court review is available, a federal
> court sitting in equity must decline to interfere with the proceedings or
> orders of state administrative agencies: (1) when there are difficult
> questions of state law bearing on policy problems of substantial public
> import whose importance transcends the result in the case then at bar;
> or (2) where the exercise of federal review of the question in a case
> and in similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350,

360–61 (1989) (quotation marks omitted).

Here, there was (and is) no ongoing state administrative proceeding—or, for

that matter, even any preexisting action by a Georgia state court or executive

official to dissolve Tugalo.  All we have is a potentially thorny legal question—

namely, whether a federal court has the authority to dissolve a state-chartered

corporation.  Standing alone, that's no basis for refusing to decide a properly filed

case.

Any way you slice it, *Burford* is "an extraordinary and narrow exception,"

*Siegel*, 234 F.3d at 1173, to a federal court's "virtually unflagging obligation" to

exercise jurisdiction, *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 817 (1976).  We see no compelling justification for extending it to

judicial-dissolution claims.[8]  Doing so would require us to elide the key ingredient that we and the Supreme Court seem to have demanded—the existence of an ongoing state administrative proceeding (or, at the very least, enforcement action). Accordingly, because it "based its ruling on an erroneous view of law," we hold that the district court abused its discretion when it abstained from adjudicating Deal's equitable counts. *McGregor v. Bd of Comm'rs of Palm Beach Cnty.*, 956 F.2d 1017, 1022 (11th Cir. 1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).  Rather than abstaining, the district court here should simply have decided, on the merits, whether the governing state law permits a federal court to dissolve a state-chartered corporation. *See* O.C.G.A. § 14-2-1430 ("The superior court may dissolve a corporation . . .").

To that end, we remand to the district court for a consideration of Deal's judicial-dissolution claim.  On remand, the district court should also decide—one way or the other—whether summary judgment is appropriate on Deal's other two equitable claims, seeking an accounting and the appointment of an auditor.

---

[8] To the extent that other courts have extended *Burford* to state-law judicial dissolution claims, we disagree. *See, e.g., Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 663 (6th Cir. 2002) (extending *Burford* to state-law judicial-dissolution claims); *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (similar).

23

\* \* \*

To recap our holdings stemming from the district court's October 2019 summary-judgment order:  We affirm the court's decisions (1) to grant summary judgment to Tugalo on Deal's fraud claim for lack of evidence of justifiable reliance (and, separately, to deny Deal's motion to defer ruling on the fraud claim); and (2) to deny Deal's request to amend his complaint after the pleading-amendment deadline.  We reverse the district court's decision to abstain under *Burford* from adjudicating Deal's judicial-dissolution count, and we remand for a consideration of that count along with his other two equitable counts.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 19, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-14336-CC
Case Style:  William Deal v. Tugalo Gas Company, Inc., et al
District Court Docket No:  2:17-cv-00209-RWS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs